# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs June 27, 2012

## STATE OF TENNESSEE v. RICHARD TIPTON

**Appeal from the Criminal Court for Greene County**
**No. 10-CR-409     John F. Dugger, Jr., Judge**

**No. E2011-02354-CCA-R3-CD - Filed November 7, 2012**

The Defendant, Richard Tipton, was convicted of driving under the influence (DUI), fourth offense, a Class E felony; driving on a revoked license, third offense, a Class A misdemeanor; violation of the seatbelt law, a Class C misdemeanor; and failure to provide evidence of financial responsibility, a Class C misdemeanor. See Tenn. Code Ann. §§ 55-10-401(a)(2), 55-50-504, 55-9-603(a)(1), and 55-12-139. The trial court sentenced the Defendant to serve one year and six months in the county jail. In this appeal as of right, the Defendant contends (1) that the evidence is insufficient to support his convictions and (2) that the trial court failed to consider the eight-year span of time in which the Defendant committed no crimes when determining his sentence, showing a lack of consideration of other sentencing factors. Following our review, we remand this case to the trial court for correction of the judgments because the Defendant was sentenced to the county jail instead of the Department of Corrections (DOC), as required by statute. In all other respects, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed; Case Remanded.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and NORMA MCGEE OGLE, JJ., joined.

John S. Anderson, Rogersville, Tennessee, for the appellant, Richard Tipton.

Robert E. Cooper, Jr., Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; C. Berkeley Bell, District Attorney General; and David Baker, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

The Defendant was indicted on November 22, 2010, for the following offenses: Count 1, DUI; Count 2, driving on a revoked license; Count 3, violation of the seatbelt law; Count 4, failure to provide evidence of financial responsibility; Count 5, driving on a revoked license, third offense; Count 6, DUI, fourth offense. A trial was set for September 28, 2011. Prior to trial, the Defendant stipulated that he had previous convictions for DUI and driving on a revoked license in exchange for receiving the minimum fine for each offense; therefore, only Counts 1 through 4 were submitted to the jury for consideration at trial.

At trial, the State presented two witnesses: the arresting officer, Lee Cutshall, and an investigator from the Tennessee Bureau of Investigation (TBI), Dave Ferguson. Officer Cutshall testified that he was on patrol around midnight on September 7, 2010, when he noticed that the Defendant was not wearing a seatbelt; he activated his blue lights. The Defendant pulled over at a Shell station and immediately got out of the car. Officer Cutshall approached the Defendant, explained the reason for the stop, and asked the Defendant for his driver's licence. The Defendant told Officer Cutshall that he could not provide one. Instead, the Defendant gave Officer Cutshall an identification card. Officer Cutshall testified that he could smell a strong odor of an intoxicant when the Defendant was talking to him. The Defendant had bloodshot, watery eyes and was unsteady on his feet. The Defendant admitted that he had been drinking during the day on September 6 and stated that he had come to the store to buy cigarettes.

Officer Cutshall testified that he administered five field sobriety tests: the horizontal gaze nystagmus (HGN), the walk and turn, the one leg stand, the finger to nose, and the finger count tests. The officer described the last four tests and the Defendant's performance on them in detail and testified that the Defendant performed poorly on all tests. Officer Cutshall testified that, at this point, he placed the Defendant under arrest and read him the Miranda rights. At approximately 1:00 a.m., the Defendant executed an implied consent form. Officer Cutshall testified that he gave the Defendant a breathalyzer, which required him to observe the Defendant for twenty minutes prior to administering the test. Officer Cutshall further testified that the Defendant did not throw up or have anything in his mouth during the twenty-minute observation period prior to his administration of the blood alcohol test. The breathalyzer results showed that the Defendant had a blood alcohol content (BAC) of .10 at 1:53 a.m.

On cross-examination, Officer Cutshall admitted that the Defendant did pass one of the five field sobriety tests he administered. However, he was unable to expound on the

particulars of this test because, according to the trial court, the law states that officers can administer an HGN test but are not allowed to testify about or discuss it in court unless they qualify as an expert in ophthalmology or optometry.[1]

Investigator Ferguson testified that he was "over" the East Tennessee area breath and alcohol program and that he maintained and certified the breath alcohol instruments. Investigator Ferguson testified that he also taught at several police academies and that he trained and certified law enforcement officers in East Tennessee "on the intox E.R.C.2, as well as being an expert in breath alcohol analysis." Investigator Ferguson explained that an E.R.C.2 was the blood alcohol instrument used by the TBI. According to Investigator Ferguson, the TBI has standards that each instrument must meet, and the E.R.C.2 has the standards built into the instrument. He explained that the blood alcohol test instruments are identified by a unique serial number and are regularly certified to ensure that they are within the TBI standards. The TBI requires each instrument to have a .005 accuracy differential, and Investigator Ferguson's job is to certify that the instruments maintain a .005 accuracy differential. Investigator Ferguson testified that he issued a certificate for the instrument used to test the Defendant's BAC because it met the TBI standards. He further testified that the instrument used to test the Defendant's BAC was working properly because he had recently inspected the instrument and found that it met the TBI standards prior to the Defendant's arrest. Investigator Ferguson explained that the instrument was previously inspected on June 10, 2010, which was done by running an alcohol solution of a known percentage through the instrument. He further explained that the solution contained .08 percent of alcohol and that the instrument tested at .075, which was within the .005 differential, so no calibration was needed. That same instrument was inspected again on September 20, 2010, thirteen days after the Defendant's arrest; it had a .003 differential, so again, no calibration was needed.

On cross-examination, Investigator Ferguson testified that alcohol has to absorb into the blood stream before it registers on a BAC test and that alcohol will not really affect a person until it has been absorbed into the bloodstream. Investigator Ferguson explained that many factors dictate how quickly alcohol may be absorbed into the blood stream but that it will not register immediately after consumption.

After the State rested its case-in-chief, the Defendant moved for judgment of acquittal, which the court denied.

The Defendant then testified in his own defense. He admitted that he was driving on a revoked license and explained that he was eligible for reinstatement at the time of his

---

[1]Although not specifically stated, the record evinces that Officer Cutshall was referring to the HGN test.

arrest, but he did not have the money to complete the process. The Defendant testified that he was wearing his seatbelt when Officer Cutshall pulled him over. He further testified that he had consumed, at most, two beers that night while watching a movie and that he had gone to the store to get cigarettes when Officer Cutshall pulled him over. The Defendant maintained that his driving was not impaired and that he did not feel he was a danger to other drivers, explaining that there was no traffic on the road. The Defendant testified that he had physical problems, his neck had been broken and his lower back "tore out," and that these injuries prevented him from standing on one leg. He also testified that Officer Cutshall never asked him about his injuries. The Defendant further testified that Officer Cutshall initially took him to the jail for a breathalyzer, but because the machine did not work, he was taken to "the work house."

On cross-examination, the Defendant stated that he had been laying blocks at his home earlier that day. He admitted that he may have had a beer at that time but maintained that he only consumed two beers that evening. The Defendant also admitted that he did not take any medication for his physical injuries but stated that was because he did not have medical insurance and could not see a doctor. The Defendant insisted that the car he was driving was insured but that he could not locate the proof of insurance at the time of his arrest. However, the Defendant admitted that he did not bring proof of insurance to trial despite Officer Cutshall's statement that the charge would be dismissed if he presented proof of insurance in court.

The jury found the Defendant guilty of Counts 1 through 4 and set the Defendant's fines for each conviction: Count 1, DUI, $1,500; Count 2, driving without a license, $1,000; Count 3, violation of the seatbelt law, $50; and Count 4, failure to provide proof of financial responsibility, $100. After the jury announced its verdict, the trial court set the Defendant's fines for Counts 5 and 6, noting his pretrial stipulation that he would receive the minimum fines for DUI and driving on a revoked license. The fine for Count 5 was set at $3,010, the minimum fine for DUI, fourth offense. The trial court stated that the fine for Count 6, driving on a revoked license, third offense, would remain at $1,000, the amount originally set by the jury on Count 2, because it was already set at the minimum. The trial court found that no mitigating factors applied and that two enhancement factors applied: the Defendant had a history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range and that the Defendant had no hesitation about committing a crime where the risk of human life was high. After considering the principles of sentencing and finding that the Defendant lacked the potential for rehabilitation, the trial court sentenced the Defendant as a Range I, standard offender and ordered him to serve one year and six months in the county jail with release eligibility after service of thirty percent. Pursuant to Tennessee Code Annotated section 55-10-403(a)(1)(A)(i), the Defendant's licence was also revoked for five years. Finally, the trial court noted that on the facts of the case, it would

have been justified in giving the Defendant a two-year sentence but explained that it decided to grant leniency considering that over the last eight years the Defendant has "done a lot better . . . in [his] life . . . compared to the last twenty before that."

The Defendant's motion for a new trial was overruled, and he perfected this timely appeal.

## ANALYSIS

The Defendant challenges the sufficiency of the convicting evidence, the sentence imposed by the trial court, and the trial court's determination that he had the requisite number of prior DUI convictions to support a conviction for DUI, fourth offense. The State responds that the prosecution produced sufficient evidence for a rational trier of fact to conclude that the Defendant drove under the influence, fourth offense; without the use of a seatbelt; without proof of fiscal responsibility; and on a revoked driver's license, third offense. The State also responds that the Defendant stipulated to being a multiple offender in connection with Counts 5 (DUI, fourth offense) and 6 (driving on a revoked license, third offense) in exchange for reduced fines and that his stipulation is a valid waiver of submitting those counts to a jury. The State further responds that the trial court properly exercised its discretion when determining the length of the Defendant's sentence.

### A. Sufficiency of the Evidence

The Defendant contends that the evidence is insufficient to support his convictions and that the trial court erred by not granting his motion for judgment of acquittal.[2] The State responds that the Defendant has waived review of his convictions on Counts 2, 3, and 4 because he failed to cite to the record or make any argument in his brief regarding the sufficiency of the evidence as to those counts. The State further responds that the evidence was sufficient for a rational jury to find that the Defendant was driving under the influence at the time of the traffic stop.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the

_____

[2] However, the Defendant never addressed the motion for judgment of acquittal issue in the argument section of his brief. Accordingly, appellate review of this issue has been waived. <u>See</u> Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court.").

crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Bland, 958 S.W.2d at 659; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "This [standard] applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). The standard of proof is the same, whether the evidence is direct or circumstantial. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011). Likewise, appellate review of the convicting evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" Id. (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

*1. Waiver of Appellate Review of Counts 2, 3,*
*and 4 and Other Issues Raised in the*
*Defendant's Brief*

As previously noted, the State argues that the Defendant has waived appellate review of driving on a revoked licence (Counts 2), violation of the seatbelt law (Count 3), and failure to provide proof of financial responsibility (Count 4) because he "states generally in his brief that the evidence for his convictions . . . was insufficient[,] . . . however, [he] makes no argument, and fails to cite to the record, in support of his contention that this Court should reverse the convictions for these Counts." We agree with the State that these issues have been waived. Rule 10 of the Rules of the Court of Criminal Appeals of Tennessee addresses inadequate briefs. It states, in relevant part, "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b). The Defendant simply states in the issue portion of his brief that the evidence is insufficient to support his convictions for DUI, driving on a revoked licence, violation of the seatbelt law, and failure to provide proof of financial responsibility; however, the actual argument portion of the brief solely addresses the DUI

conviction. Therefore, the Defendant is not entitled to review of his convictions for driving on a revoked licence, violation of the seatbelt law, and failure to provide proof of financial responsibility.

## 2. Sufficiency of DUI Evidence

Addressing the Defendant's remaining contention that the evidence presented at trial was insufficient to support his conviction for DUI, the Defendant was convicted of DUI, as indicted, in violation of Tennessee Code Annotated section 55-10-401. The statute states, in pertinent part:

> (a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises that is generally frequented by the public at large, while:
>
> > (2) The alcohol concentration in the person's blood or breath is eight-hundredths of one percent (.08 %) or more.

Tenn. Code Ann. §55-10-401(a)(2). For the State to prove the Defendant's guilt, the evidence must establish beyond a reasonable doubt that at the time of the Defendant's driving his car on a public road, his blood alcohol content was .08 percent or greater. See id.

In the instant case, the jury had sufficient evidence from which to reasonably conclude that the Defendant had committed the offense of DUI by operating a motor vehicle with a BAC of .08 or more. Officer Cutshall testified that he pulled the Defendant over because he noticed that the Defendant was not wearing his seatbelt. The Defendant immediately exited the car, and as Officer Cutshall was explaining the reason for the stop, he smelled a strong odor of an intoxicant when the Defendant was talking to him. Officer Cutshall testified that the Defendant had bloodshot, watery eyes and was unsteady on his feet. Officer Cutshall testified that the Defendant failed four of the five field sobriety tests he administered and that he placed the Defendant under arrest. At approximately 1:00 a.m., the Defendant signed an implied consent form, and Officer Cutshall transported him to jail to administer a blood alcohol test. The evidence also showed that Officer Cutshall properly administered the Defendant's BAC test, observing the Defendant for twenty minutes prior to the test and ensuring that the Defendant neither ingested nor regurgitated anything during that time. The testimony of Investigator Ferguson evinced that the BAC instrument that Officer Cutshall used to administer the Defendant's BAC test had been certified to be within TBI standards,

a .05 differential, both before and less than thirteen days after the Defendant's test was administered, and was working properly. The blood alcohol test results showed that the Defendant had a BAC of .10 at 1:53 a.m., .02 over the legal limit of .08.

An officer's belief that a defendant is intoxicated and a defendant's failing field sobriety tests is generally relevant to the issue of blood alcohol content. State v. Stacy R. Dowell, E2002-01918-CCA-R3-CD, 2003 WL 402815, at *5 (Tenn. Crim. App. Feb. 24, 2003); see, e.g., State v. Alan Leonard Smith, No. E2000-01891-CCA-R3-CD, Anderson County, slip op. at 6 (Tenn. Crim. App. Oct. 19, 2001) (holding evidence of the defendant's intoxication and a blood alcohol concentration of .17 percent four hours later supported the inference that his blood alcohol content was .10 or greater at the time he was driving); State v. Michael G. Waldrum, No. M1999-01924-CCA-R3-CD, Williamson County, slip op. at 4 (Tenn. Crim. App. Dec. 8, 2000) (holding evidence of defendant's slurred speech, bloodshot eyes, poor performance on field sobriety tests, and admission that he had been drinking along with a blood alcohol concentration of .21 percent one and one-half hours after driving was sufficient to support jury's inference that defendant was driving with a blood alcohol content of .10 or more); State v. Lester Arnold Clouse, No. 01C01-9802-CR-00069, White County, slip op. at 7-8 (Tenn. Crim. App. Mar. 31, 1999), app. denied (Tenn. July 6, 1999) (holding evidence that defendant showed signs of intoxication when officer arrived on scene and failed field sobriety tests along with blood alcohol concentration of .14 percent one hour after driving was sufficient). Therefore, the jury could properly use the officer's testimony that he observed various signs of intoxication on the part of the Defendant at the time of arrest, including failing four field sobriety tests, and the BAC test results to conclude that the Defendant had been driving his car on a public road with a blood alcohol content of .08 or greater.

Although the Defendant contends that the test was not "administered at a reasonable time after the Defendant had been driving[,]" the record reflects that the Defendant did not object to the admission of the BAC test at trial, nor did he raise it as an issue in the motion for new trial. Rule 36(a) states that appellate relief is generally unavailable when a party has "failed to take whatever action was reasonably available to prevent or nullify the harmful effect of any error." Tenn. R. App. P. 36(a); see also Tenn. R. Evid. 103(a)(1) (requiring a timely objection as a prerequisite to a finding of error based on the trial court's admission of evidence); State v. Smith, 24 S.W.3d 274, 279-80 (Tenn. 2000) (holding that a failure to object to otherwise inadmissible evidence renders the evidence admissible). Therefore, we decline to address any arguments challenging the admissibility of the BAC test or the reasonableness of the delay in Officer Cutshall's administration of the BAC test. See Tenn. Ct. Crim. App. R. 10(b). The Defendant has failed to show that the evidence presented at trial was insufficient to support his DUI conviction.

*B. Sentencing*

The Defendant challenges the length of his sentence and contends that the trial court improperly weighed the mitigating factors. The State responds that the Defendant has offered no proof that the trial court sentenced him improperly nor has he shown how the trial court failed to consider the sentencing principles and all relevant facts and circumstances. We agree with the State.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b). To facilitate appellate review, "it is critical that trial courts adhere to the statutory requirement set forth in Tennessee Code Annotated section 40-35-210(e)" and articulate in the record its reasons for imposing the specific sentence. See State v. Susan Renee Bise, -- S.W.3d --, No. E2011-00005-SC-R11-CD, 2012 WL 4380564, at *20 n.41 (Tenn. Sept 26, 2012).

The 2005 amendments to the Sentencing Act "served to increase the discretionary authority of trial courts in sentencing." Id. at *18. Currently, upon a challenge to the sentence imposed, it is the duty of this court to analyze the issues under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at *17. Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," Tennessee Code Annotated section 40-35-102(1), a punishment sufficient "to prevent crime and promote respect for the law," Tennessee Code Annotated section 40-35-102(3), and consideration of a defendant's "potential or lack of potential for . . . rehabilitation," Tennessee Code Annotated section 40-35-103(5). State v. Carter, 254 S.W.3d 335, 344 (Tenn. 2007). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001).

Our amended Sentencing Act no longer imposes a presumptive sentence. Carter, 254 S.W.3d at 343. Tennessee Code Annotated section 40-35-210 was amended to provide as

follows:

> (c) The court shall impose a sentence within the range of punishment, determined by whether the defendant is a mitigated, standard, persistent, career, or repeat violent offender. In imposing a specific sentence within the range of punishment, <u>the court shall consider, but is not bound by, the following advisory sentencing guidelines</u>:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

> (d) The sentence length within the range should be consistent with the purposes and principles of this chapter.

Tenn. Code Ann. § 40-35-210(c), (d) (emphasis added).

"[T]he 2005 amendments rendered advisory the manner in which the trial court selects a sentence within the appropriate range, allowing the trial court to be guided by—but not bound by—any applicable enhancement or mitigating factors when adjusting the length of a sentence." <u>Bise</u>, 2012 WL 4380564, at *17. In accordance with the broad discretion now afforded our trial court's sentencing decisions,

> misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005. So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld.

<u>Id.</u>

In the instant case, the transcript illustrates that the trial court considered all the sentencing factors and the relevant facts and circumstances of the case. Even the Defendant in his appellate brief acknowledges that "[t]he court considered the sentencing guidelines of T[ennessee] C[ode] A[nnotated] 40-35-101, et seq." Therefore, the Defendant's sole

sentencing challenge is to the weight that the trial court gave to the eight-year span of time in which the Defendant committed no criminal activity, i.e., that this fact was not given sufficient weight in determining the length of the Defendant's sentence. However, as stated above, the 2005 amendments to the Sentencing Act deleted appellate review of the weighing of mitigating and enhancement factors, so this issue is not appropriate to raise on appeal. Nevertheless, we note that the trial court did consider during sentencing that the Defendant had abstained from criminal activity for eight years and explicitly stated that its consideration of that fact was why it sentenced the Defendant to serve one year and six months instead of the two-year sentence supported by the record. The Defendant was convicted by a jury of all four counts submitted for their deliberation, and he had previously stipulated to multiple, prior convictions for DUI and driving on a revoked license. The jury convictions, coupled with the pretrial stipulations, effectively secured his convictions in the remaining two counts: DUI, fourth offense, and driving on a revoked license, third offense. The trial court stated as much and sentenced him within the applicable range for his convictions, noting that it was granting leniency due to the Defendant's eight-year hiatus from criminal activity despite his thirty-year history of criminal activity. Therefore, we cannot conclude that the trial court abused its discretion by sentencing the Defendant to serve one year and six months.

However, we remand this case to the trial court for correction of the judgments because the Defendant was sentenced to the county jail instead of the DOC, as required by statute. See Tenn. Code Ann. § 40-35-314 (a).

CONCLUSION

This case is remanded for correction of the judgments in accordance with this opinion. In all other respects, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

-11-